STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

AMY ROBINSON

VERSUS

ALLEN PARISH POLICE JURY, ET AL.

************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. C-2003-490,
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

REVERSED AND REMANDED.

Donald L. Mayeux
Attorney at Law
Post Office Box 1460
211 N. Second Street
Eunice, LA  70535
(337) 457-9610
COUNSEL FOR PLAINTIFF/APPELLANT:
     Amy Robinson

Christine S. Goldberg
McGlinchey, Stafford, PLLC
14th Floor, One American Place
Baton Rouge, LA  70825
(225) 383-9000
COUNSEL FOR DEFENDANT/APPELLEE:
     Acadian Ambulance Service, Inc.

PETERS, J.

This litigation arises from an Allen Parish, Louisiana automobile accident which claimed the life of Carlton Brooks Celestine, the father of Hallie Taylor Celestine. Hallie's mother, Amy Robinson, instituted suit on behalf of her minor daughter in an effort to recover the damages the child sustained as a result of her father's death. Ms. Robinson has appealed the trial court's grant of an exception of prematurity dismissing Acadian Ambulance Service, Inc. (Acadian Ambulance) as a defendant in the lawsuit. For the following reasons, we reverse the judgment at issue and remand the matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD[1]

At approximately 5:00 a.m. on September 13, 2002, Mr. Celestine sustained severe physical injuries when the vehicle in which he was a passenger left the travel surface of an Allen Parish road and struck a tree. Mr. Celestine survived the initial impact but was pronounced dead soon after his arrival at the American Legion Hospital in Jennings, Louisiana.

Immediately after the accident, someone called for medical assistance, and that call was answered by the arrival at the accident scene of a helicopter operated by Acadian Ambulance. The crew of the helicopter immediately administered medical assistance to Mr. Celestine, but, when they attempted to transport him to the hospital, they were unable to do so because of mechanical difficulties with the helicopter. The crew then called for ground transportation, which ultimately arrived at the scene and transported Mr. Celestine to the hospital. The ambulance left the accident scene with Mr. Celestine at approximately 5:54 a.m. and arrived at the hospital at approximately

---

[1]For the purpose of considering the exception of prematurity, we accept as true the allegations in the plaintiff's pleadings.

6:19 a.m. As previously stated, Mr. Celestine was pronounced dead soon after his arrival at the hospital.

In her suit on behalf of Hallie, Ms. Robinson named both the Allen Parish Police Jury and Acadian Ambulance as defendants, alleging that both were negligent in causing Mr. Celestine's death.[2] She predicated Acadian Ambulance's liability upon the assertion that, but for the mechanical problem with the helicopter, Mr. Celestine would have received medical attention much sooner than he did and that, had he received more timely medical attention, "he may have been able to survive the accident."

In response to this petition, Acadian Ambulance filed an exception of prematurity based on the premise that the claim against it was an action governed by La.R.S. 40:1299.41 *et seq.*, the Medical Malpractice Act (MMA), and that Ms. Robinson was required to submit the claim to a medical review panel before filing suit. After a hearing on the exception,[3] the trial court agreed with Acadian Ambulance's position and dismissed it from the litigation. After the trial court executed a written judgment dismissing Acadian Ambulance from the litigation, Ms. Robinson appealed, asserting as her sole assignment of error that the trial court erred in granting the exception of prematurity.

**OPINION**

Louisiana Revised Statutes 40:1299.47(B)(1)(a)(i) provides that "[n]o action against a health care provider covered by [the MMA], or his insurer, may be

---

[2]The Allen Parish Police Jury's negligence is not at issue in this appeal.

[3]The record contains an affidavit of Heidi M. Overshiner, the court reporter for the Thirty-third Judicial District Court, asserting that, due to a malfunction in the recording equipment, the hearing held on February 19, 2004, was "not transcribable." Therefore, the record contains no transcript of the February 19 hearing.

commenced in any court before the claimant's proposed complaint has been presented

to a medical review panel established pursuant to this Section." Thus, the only

question before us is whether the helicopter malfunction falls within the MMA so as

to require Ms. Robinson to submit her daughter's claim to a medical review panel

before filing suit.

In reversing the trial court's grant of the exception of prematurity, we find that

the supreme court's recent decision in *Williamson v. Hospital Service District No. 1

of Jefferson*, 04-0451 (La. 12/1/04), 888 So.2d 782, is instructive. In *Williamson*, the

plaintiff alleged that she was injured when a wheel fell off of a wheelchair in which

she was being transported by a hospital employee. She asserted that the hospital and

its employee or employees negligently failed to repair the wheelchair, negligently

failed to supervise the repair of the wheelchair, and negligently failed to insure that

the wheelchair was in proper working condition prior to returning it to service. The

trial court granted an exception of prematurity, finding that the plaintiff was required

to first submit her claim to a medical malpractice panel. The court of appeal affirmed

the trial court judgment, concluding that the plaintiff's claim was one arising in

medical malpractice and was therefore subject to the provisions of the MMA.

In reversing the grant of the exception of prematurity, the supreme court

explained the purpose of the exception of prematurity and the history and purpose of

the MMA and set forth the six principles to be considered in determining whether

certain conduct constitutes medical malpractice. In doing so, the supreme court stated

the following:

> The dilatory exception of prematurity provided in La.Code Civ.
> Proc. art. 926 questions whether the cause of action has matured to the
> point where it is ripe for judicial determination. *Spradlin v. Acadia-St.
> Landry Medical Foundation*, 98-1977 (La.2/29/00), 758 So.2d 116; *see*

3

*also* Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 21-3(f)(1996). An action is premature when it is brought before the right to enforce it has accrued. La.Code. Civ. Proc. art. 423. Under the Medical Malpractice Act, a medical malpractice claim against a private qualified health care provider is subject to dismissal on a timely filed exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La.Rev.Stat. 40:1299.47 A. The burden of proving prematurity is on the exceptor, in this case the defendant health care provider; therefore, the defendant must show that it is entitled to a medical review panel. *Hidalgo v. Wilson Certified Exp. Inc.*, 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114, 117; *Bennett v. Krupkin*, 00-0023 (La.App. 1 Cir. 3/28/02); 814 So.2d 681, 685-86[, *writ denied*, 02-1208 (La. 6/21/02), 819 So.2d 338]. Accordingly, the question before the court is whether the plaintiff's claim is one of medical malpractice.

As we have observed on numerous occasions, the legislature enacted the Medical Malpractice Act in 1975 in response to a "perceived medical malpractice insurance 'crisis.'" *Hutchinson v. Patel*, 93-2156 (La.5/23/94), 637 So.2d 415, 419; *see also Butler v. Flint Goodrich Hosp.*, 607 So.2d 517, 521 (La.1992)[, *cert. denied*, 508 U.S. 909, 113 S.Ct. 2338 (1993)]; *Galloway v. Baton Rouge Gen. Hosp.*, 602 So.2d 1003, 1005 (La.1992); *Everett v. Goldman*, 359 So.2d 1256, 1261 (La.1978). The legislature intended the Act to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical services to the public. *Hutchinson v. Patel*, 637 So.2d at 419. We have recognized that, to achieve those goals, the Act gives qualified health care providers two substantial advantages in actions against them for malpractice, namely, a limit on the amount of damages and the requirement that the claim first be reviewed by a medical review panel before commencing suit in a court of law. *Id.; see also* La.Rev.Stat. 40:1299.42(B); La.Rev.Stat. 40:1299.47.

This court has, without exception, emphasized that the MMA and its limitations on tort liability for a qualified health care provider apply strictly to claims "arising from medical malpractice," La.Rev.Stat. 40:1299.41(I), and that all other tort liability on the part of the qualified health care provider is governed by general tort law. *Coleman v. Deno*, [01-1517, 01-1519, 01-1521,] p. 15 [(La. 1/25/02)], 813 So.2d [303] at 315; *Spradlin v. Acadia-St. Landry Medical Foundation*, 98-1977 (La.2/29/00), 758 So.2d 116; *Hutchison v. Patel*, 637 So.2d at 419; *Sewell v. Doctors Hosp.*, 600 So.2d 577, 578 (La.1992). In *Sewell*, we explained:

> The Medical Malpractice Act's limitations on the liability of a health care provider are special legislation in derogation of the rights of tort victims. As such, the coverage of the Act should be strictly construed. These limitations apply only in cases of liability for malpractice as defined in the Act. Any other liability of

4

the health care provider to the patient is not subject to these limitations.

600 So.2d at 578.

The Act defines "malpractice" as follows:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

La.Rev.Stat. 40:1299.41A(8).[4]  The Act further defines "tort" and "health care" as follows:

> "Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another.  The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
>
> "Health care" means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

La.Rev.Stat. 40:1299.41 A(7) and (9).

Cognizant of the principles espoused above, in *Coleman v. Deno* we set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the MMA:

> (1) whether the particular wrong is 'treatment related' or caused by a dereliction of professional skill,

---

[4]Following the alleged incident giving rise to the cause of action in *Williamson*, 888 So.2d 782, La.R.S. 40:1299.41(A)(8) was amended by 2001 La. Acts. No. 108, § 1, to insert "acts or omissions in the training or supervision of health care providers, or from" between "from" and "defects in blood."

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

(3) whether the pertinent act or omission involved assessment of the patient's condition,

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

(5) whether the injury would have occurred if the patient had not sought treatment, and

(6) whether the tort alleged was intentional.

*Coleman v. Deno*, 01-1517, p. 17, 813 So.2d at 315-16 (citing Holly P. Rockwell, Annotation, *What Patient Claims Against Doctor, Hospital, or Similar Health Care Provider Are Not Subject to Statutes Specifically Governing Actions and Damages for Medical Malpractice*, 89 A.L.R.4th 887 (1991)).

*Id.* at 785-87.

Applying the factors set forth in *Coleman* to the matter before us, we conclude that, under the circumstances alleged, the negligent failure to timely transport Mr. Celestine by helicopter from the scene of the accident to a hospital did not constitute medical malpractice within the provisions of the MMA.

(1) *Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill.*

The conduct complained of was not "treatment related," nor was it caused by a dereliction of "professional skill" within the meaning of the MMA. The wrong was not a failure to render treatment services, but a failure to render transportation services. Mr. Celestine was not handled or loaded onto or unloaded from the helicopter and was not transported by helicopter; thus, there was no allegation of negligence in his transportation. The allegations of the petition, when read in context, do not refer to some conduct that took place during the ground ambulance transport. Rather, the allegations refer to the delay caused by the breakdown of the helicopter and the consequent failure to transport Mr. Celestine by air. Ms. Robinson does not

6

allege that anything untoward occurred during the actual transport by ground ambulance, nor does she allege that the harm resulted because the ground ambulance was a slower means of transportation. Specifically, she alleges that the harm occurred because the faster means of transportation, *i.e.*, the helicopter, could not transport Mr. Celestine because of faulty maintenance.

2) *Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached.*

In *Williamson,* 888 So.2d at 790, the supreme court stated that it could not "envision the need for expert *medical* evidence to determine whether the appropriate standard of care was breached" with regard to the defective wheelchair wheel. The same rationale applies to the matter now before us. We can perceive of no inferential circumstance in the pleadings that would require medical expertise to determine whether the appropriate standard of care was breached where the alleged fault was the failure to maintain the air ambulance in flying condition. While medical evidence might be necessary to establish whether the delay in transporting Mr. Celestine to the hospital contributed to his death or reduced his chances of survival, that evidence would relate to the elements of causation and damages, and not to whether the standard of care in the maintenance of the aircraft was breached. *See Nash v. Brown*, 04-751 (La.App. 3 Cir. 3/16/05), 898 So.2d 619; *Romero v. Willis-Knighton Med. Ctr.*, 38,374 (La.App. 2 Cir. 4/7/04), 870 So.2d 474, *writ denied*, 04-1404 (La. 4/22/05), 899 So.2d 573.

(3) *Whether the pertinent act or omission involved assessment of the patient's condition.*

The mechanical problems which caused the helicopter to remain grounded did not implicate or require an assessment of Mr. Celestine's medical condition. In fact,

the same would have been true if Acadian Ambulance had sent an ambulance to the scene and Mr. Celestine's transportation had been delayed due to a mechanical failure of the ambulance. The alleged failure in this matter was the failure to timely provide transportation when needed, not the selection of the mode of conveyance. This failure had nothing to do with the assessment of Mr. Celestine's condition.

(4) *Whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform.*

This factor is not applicable as worded because Acadian Ambulance is not a physician or a hospital. It is, however, a health care provider which is licensed to provide health care or professional services as an ambulance service. *See* La.R.S. 40:1299.41(A)(1).[5] We find that this factor's requirements are not met in the circumstances of this case. Even assuming this factor applies, as previously stated, it is the nature of the act complained of, and not the status of Acadian Ambulance as a health care provider, that is determinative of the issue. Acadian Ambulance's status as a qualified health care provider does not mean that every claim against it is covered by the MMA. Strict construction of the MMA requires that its limitations on liability apply only to claims of negligence by the health care provider in the provision of "health care" or "professional services" to a patient. *Wild v. NS'NG, Inc.*, 04-0933 (La.App. 1 Cir. 12/30/04), 898 So.2d 466. Maintaining the structural and operational

---

[5]Licensure of aircraft used for an air ambulance service requires an inspection for medical and safety equipment, verification that the aircraft meets Federal Aviation Administration requirements, and proof of insurance coverage in specified amounts for aircraft liability, medical malpractice, and commercial general liability. La.R.S. 40:1236.2(C)(4)(a), (b), and (d). The licensing requirements clearly differentiate between its health care and professional medical services functions and its function as a provider of vehicles of transportation. By the nature of its activities, there is a wide separation between its responsibilities to mechanically maintain its vehicles of transport and its responsibilities as a health care provider while patients are under its care. Aircraft mechanics perform one responsibility, and trained health care specialists perform the other.

integrity of a helicopter cannot be considered a part of Mr. Celestine's treatment, nor would such care require the assistance of a doctor, nurse or paramedic.

(5) *Whether the injury would have occurred if the patient had not sought treatment.*

Weighing this factor in favor of Acadian Ambulance has some superficial applicability because it appears that Mr. Celestine would have died if no one had called an ambulance to take him to a hospital for treatment. However, the act or omission must still be linked to treatment. While an act of malpractice can occur in the rendition of professional services, the patient must still be in the process of receiving "health care" from the health care provider when the negligent rendition of professional services occurs. *Price v. City of Bossier City*, 96-2408 (La. 5/20/97), 693 So.2d 1169. In other words, the act or omission must have occurred "during the patient's medical care, treatment or confinement." La.R.S. 40:1299.41(A)(9); *Richard v. Louisiana Extended Care Ctrs.*, 02-0978 (La. 1/14/03), 835 So.2d 460. There are no allegations in the plaintiff's petition that such was the case.

(6) *Whether the tort alleged was intentional.*

There is no allegation that the alleged tort was intentional.

## DISPOSITION

For the foregoing reasons, we reverse the trial court's judgment granting the exception of prematurity and remand this matter to the trial court for further proceedings. We assess all costs of this appeal to Acadian Ambulance Service, Inc.

**REVERSED AND REMANDED.**