SUSAN M. CHEHARDY, Judge.
 

 |20n appeal, plaintiffs seek review of the trial court judgment maintaining defendants’ exception of prematurity. For the following reasons, we affirm that judgment.
 

 Facts
 

 Late on the evening of March 4, 2008, Norbert Encalade began having chest pain and difficulty breathing. At 11:28 p.m., his wife called 911 to request emergency medical assistance. In response, the dispatcher sent an ambulance from the West Jefferson Medical Center Ambulance Service to the couple’s home in the Town of Jean Lafitte.
 

 At 11:52 p.m., the ambulance, which was driven by Gerald Carter, arrived at the Encalade’s home. After rendering immediate medical assistance, the emergency medical personnel departed with Mr. En-calade for West Jefferson Medical Center (“WJMC”) at 12:14 a.m. on March 5, 2008.
 

 According to the plaintiffs’ brief, during the trip to the hospital, the ambulance driver traveled at forty-five (45) miles per hour, without using the |aambulance’s emergency lights. The ambulance arrived at WJMC at 12:30 a.m. Shortly after arriving at the hospital, Mr. Encalade died.
 

 On October 28, 2008, Mrs. Encalade, individually, and on behalf of their four children filed suit in the Twenty-Fourth Judicial District Court, against the hospital, the ambulance service, the ambulance driver, the Town of Jean Lafitte and Jefferson Parish alleging that their negligence caused Mr. Encalade’s death. The plaintiffs specifically allege that Gerald Carter was negligent for “failing to timely respond and transport Mr. Encalade to a health care facility” and WJMC was negligent for “failing to train, monitor and supervise its employees.”
 

 On December 23, 2008, defendants, Jefferson Parish Hospital District No. 1 d/b/a WJMC and Gerald Carter excepted that the Encalades’ action was premature because the instant suit was filed before the plaintiffs’ claim was reviewed by a medical review panel as required by La. R.S. 40:1299.41
 
 et seq.
 
 On February 11, 2009, the trial judge heard defendants’ exception and took it under advisement.
 

 On March 2, 2009, the district court maintained the exception of prematurity finding that the plaintiffs’ claims fell within the scope of the Louisiana Medical Malpractice Act (“LMMA”). In its written Reasons for Judgment, the trial court wrote:
 

 The Court considered the Louisiana Supreme Court case of
 
 Coleman v. Deno,
 
 01-1517, (La.1/25/02), 813 So.2d 303, 315, and finds that the six factors set forth by the Louisiana Supreme Court for determination of whether the conduct of a qualified health care provider constitutes “malpractice” has[sic] been satisfied.
 

 The plaintiffs cited
 
 Robinson v. Allen Parish Police Jury,
 
 05-0394 (La.App. 3 Cir. 12/30/05), 918 So.2d 535, 539, and
 
 Hidalgo v. Wilson Certified Express, Inc.,
 
 94-1322 (La.App. 1 Cir. 5/14/96), 676 So.2d 114, 119, in their opposition memorandum. The court finds that these cases are clearly distinguishable
 
 *1118
 
 from the case at bar. In
 
 Robinson, supra,
 
 the plaintiffs alleged that there was a delay in transporting an accident victim to the emergency room because the defendant’s helicopter had mechanical problems. The
 
 Robinson
 
 court l/ound that a helicopter’s mechanical problems fall outside [of] the scope of the Louisiana Medical Malpractice Act.
 

 In
 
 Hidalgo, supra,
 
 the plaintiff was riding in the back of an ambulance which was involved in a motor vehicle accident. The ambulance ran into the rear of the car preceding it and caused a four car collision. Upon impact, the patient struck her head and sustained injuries. The
 
 Hidalgo
 
 court found that the negligence of the ambulance driver in causing a motor vehicle accident did not fall within the ambit of the Louisiana Medical Malpractice Act.
 

 In contrast, the plaintiffs at bar are alleging that Norbert Encalade’s medical condition required urgent action on the part of the emergency medical technicians who assessed him at his home. The plaintiffs contend that Mr. Encalade’s medical condition was of such severity that he should have been transported by ambulance at a speed in excess of 45 miles per hour and with flashing emergency lights. The plaintiffs’ allegations fall within the scope of the Louisiana Medical Malpractice Act because it places squarely at issue the emergency medical technicians’ assessment of the patient’s medical condition and the nature of the response (flashing lights and the speed of emergency transport) required by the applicable standard of care.
 

 On appeal, appellants argue that the trial judge erred as a matter of law because the defendants’ negligent transport of Mr. Encalade is not the kind of emergency medical care or medical duty that the legislature sought to immunize from liability under the LMMA. Appellees respond that this claim falls squarely within the statutory and jurisprudential definition of medical malpractice.
 

 The Louisiana Medical Malpractice Act is found at La. R.S. 40:1299.41,
 
 et seq.
 
 La. R.S. 40:1299.41(A)(9) defines “health care” as “any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient’s medical care, treatment or confinement....” In Louisiana, a “health care provider” is defined as “a ... corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, ... ambulance service, ... or agent thereof acting in the course and scope of his employment.” La. R.S. 40:1299.41(A)(10).
 

 |flLa. R.S. 40:1299.41(A)(1) defines an “ambulance service” as:
 

 an entity ... which operates either ground or air ambulances, using a minimum of two persons on each ground ambulance, at least one of whom is trained and registered at the level of certified emergency medical technician basic, or at the intermediate or paramedic levels, or one who is a registered nurse, ... or any officer, employee, or agent thereof acting in the course and scope of his employment.
 

 La. R.S. 40:1299.41(A)(13) defines “malpractice,” as:
 

 any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a
 
 *1119
 
 health care provider arising from defects in blood, or blood components, in the training or supervision of health care providers....
 

 La. R.S. 40:1299.47 provides, in pertinent part, that:
 

 (A)(1) All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel....
 

 [[Image here]]
 

 (B)(l)(a)(i) No action against a health care provider covered by this Part or his insurer, may be commenced in any court before the claimants’ proposed complaint has been presented to a medical review panel established pursuant to this Section.
 

 Although appellants contend that these unintentional torts were not “healthcare” services, our review of the original and amended petition reflects that appellants specifically alleged that the failure of the emergency medical technicians to hurriedly get to Mr. Encalade, promptly stabilize Mr. Encalade for transport, and quickly return Mr. Encalade to WJMC contributed to the rapidity of his death. Further, appellants specifically allege that WJMC was negligent in failing to properly train the emergency medical technicians.
 

 Medical malpractice is statutorily defined, in part, as “failure to render services timely and the handling of a patient, including loading and unloading of a patient, and ... in the training or supervision of health care providers.” The trial |Bcourt reasoned that “plaintiffs’ allegations fall within the scope of the Louisiana Medical Malpractice Act because it places squarely at issue the emergency medical technicians’ assessment of the patient’s medical condition and the nature of the response (flashing lights and the speed of emergency transport) required by the applicable standard of care.” We find no error in that reasoning. Accordingly, we affirm the grant of defendants’ exception of prematurity. Costs for this appeal are assessed equally between the appellants and the appellees.
 

 AFFIRMED.