# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 13-1269


**BRENNA ASH MILLER, ET AL.**

**VERSUS**

**ACADIAN AMBULANCE SERVICE, INC., ET AL.**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20126808
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of J. David Painter, Phyllis M. Keaty, and John E. Conery, Judges.


**AFFIRMED.**

**Robert J. David**
**Walter C. Morrison, IV**
**Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.**
**1100 Poydras Street**
**New Orleans, Louisiana 70163-2800**
**(504) 522-2304**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Brenna Ash Miller, et al.**

**Clint Pierson**
**Pierson Law Firm**
**5100 Village Walk, Suite 101**
**Covington, Louisiana 70433**
**(985) 809-1577**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Brenna Ash Miller, et al.**

**Charles J. Foret**
**Briney & Foret**
**Post Office Drawer 51367**
**Lafayette, Louisiana 70505**
**(337) 237-4070**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Northshore EMS, LLC**

**Nadia de la Houssaye**
**Jones Walker, LLP**
**Post Office Drawer 3408**
**Lafayette, Louisiana 70502-3408**
**(337) 262-9000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Acadian Ambulance Service, Inc.**

**James D. "Buddy" Caldwell**
**Attorney General**
**Luke Lancaster**
**Assistant Attorney General**
**Louisiana Department of Justice**
**400 Poydras Street, Suite 1600**
**New Orleans, Louisiana 70130**
**(504) 599-1200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State of Louisiana, et al.**

**CONERY, Judge.**

Brenna Ash Miller, individually, as the duly appointed guardian of the minor child, Skyler Miller, and the individual authorized to make the claim on behalf of the Estate of Richard A. Miller, Jr., ("Miller") appeals the judgment of the trial court dismissing her lawsuit without prejudice. Acadian Ambulance Service, Inc. ("Acadian"), Louisiana Emergency Response Network ("LERN"), and Medical Center of Louisiana at New Orleans now known as Interim LSU Public Hospital, ("Interim LSU"), filed an exception of prematurity which the trial court granted, finding that the Millers' claim is governed by the Louisiana Medical Malpractice Act ("LMMA"), La.R.S. 40:1299.41-48 and must first be presented to a Medical Review Panel ("MRP") for a determination prior to filing a lawsuit in district court. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 28, 2011, Richard A. Miller, Jr. ("Mr. Miller") was involved in a serious motorcycle accident in Washington Parish. The Northside Emergency Medical Service ("Northside") responded to a 911 call and transported Mr. Miller to the Riverside Medical Center ("Riverside") where he was attended to by Dr. Barbara Cohn and other Riverside Emergency Room personnel.

Dr. Cohn determined that Mr. Miller's condition was critical. As a result of the accident, he had sustained extensive internal injuries, which included lacerations of the lung, heart, and kidney, extensive blood loss, multiple fractures, and a flail chest, which is a crushing chest injury due to the fracture of several ribs.

In Dr. Cohn's opinion, Mr. Miller's critical medical condition required her to contact LERN, as Riverside did not have the necessary level of medical resources to properly treat Mr. Miller's injuries. Dr. Cohn's call to LERN was the

first step in initiating the procedure to have Mr. Miller transported to a trauma facility equipped to treat Mr. Miller's extensive injuries.

LERN was designed to serve as the clearing house for all of the resources of each medical facility and to determine which facility is best equipped to treat a particular patient's condition. The LERN dispatch center is staffed with a trained paramedic who receives the incoming calls, and based on the information provided from the transferring health care provider, LERN makes a determination as to the appropriate trauma facility to treat the injured patient.

The LERN dispatcher informed Dr. Cohn that Mr. Miller should be transferred to Interim LSU. A call was then placed by a member of the Riverside staff at 5:36 p.m. to Acadian to request that a helicopter be dispatched to Riverside in order to transport Mr. Miller to Interim LSU.

The recorded telephone conversation between Riverside and Acadian reflects that Riverside was informed that due to a required crew change and the need for refueling of its helicopter, it would be an hour to an hour and fifteen minutes before Acadian could respond and arrive at Riverside to transport Mr. Miller. The Riverside staff member indicated to the Acadian dispatcher that if this period of time was not acceptable to Dr. Cohn, he would call back. No call canceling the helicopter transportation of Mr. Miller was received, and the Acadian helicopter arrived at Riverside at 7:08 p.m., some seventeen minutes after the anticipated arrival time.[1]

Once the determination by LERN was made to transport Mr. Miller to Interim LSU, Dr. Cohn began the testing on Mr. Miller required by Interim LSU

---

[1] At the hearing on the exception, Acadian introduced into evidence the medical records and the recording of the initial telephone call between Riverside and Acadian concerning Mr. Miller's medical transportation to Interim LSU by Acadian, without objection from the Millers.

prior to his transport by Acadian. Upon arrival at Riverside, Acadian was not permitted to immediately transport Mr. Miller as the testing required by Interim LSU was not complete. Once the testing was completed, Mr. Miller was cleared for transport at 7:40 p.m., thirty-two minutes after Acadian's arrival at Riverside.

Mr. Miller was taken to the aircraft by Riverside personnel and Acadian's EMT/paramedic Kimberly Wesley ("Wesley"). Mr. Miller was loaded and secured for takeoff. Wesley provided constant critical care monitoring and medical treatment throughout the transport, which included placing Mr. Miller on a ventilator and suctioning his chest tube. Mr. Miller's condition rapidly declined right before the helicopter landed in New Orleans near the Superdome, as Interim LSU did not have a helicopter landing pad and the Superdome site was the closest landing pad to Interim LSU.

Mr. Miller was then transported by ambulance to Interim LSU, with the ambulance staff continuing to attempt to maintain Mr. Miller's medical status. Mr. Miller unfortunately died at approximately the same time as his arrival at Interim LSU at approximately 8:12 p.m.

On December 27, 2012, the Millers timely filed a medical malpractice complaint with the Division of Administration and the Louisiana Patient's Compensation Fund, naming Interim LSU, LERN, and Acadian, the three health care provider defendants before this court on appeal.

On December 27, 2012, the Millers also filed a petition for damages in the Fifteenth Judicial District Court, Parish of Lafayette naming LERN and Acadian as defendants. The Millers' "First Supplemental and Amending Petition for Damages," filed on April 2, 2013, added three other health care providers as

defendants, Interim LSU, Northside EMS, LLC, Barbara Cohn, M.D., and her insurer, Proassurance Specialty Insurance Company ("Proassurance").

All health care provider defendants, except Northside, filed dilatory exceptions of prematurity in response to the Millers' petitions. Each asserted they were qualified health care providers pursuant to the LMMA, La.R.S. 40:1299.39 & 40:1299.41. As qualified health care providers under the LMMA, providing medical care to Mr. Miller, each claimed to be entitled to have the Millers' claims dismissed without prejudice pending review and notification of an opinion by the MRP, pursuant to La.R.S. 40:1299.47(A)(2)(a) & (B)(1)(a)(i). In granting the health care provider defendants' exceptions, the exceptors assert that the Millers would not be prejudiced, as under the LMMA prescription is suspended in state district court until the MRP sends notification of its opinion, following which the Millers would have ninety days to file suit in state district court.

A hearing was held on the health care defendants' exception of prematurity on July 22, 2013. At the beginning of the hearing, the dilatory exception of prematurity filed by Dr. Barbara Cohn and her insurer, Proassurance, was granted by the trial court without opposition, and the Millers' claims as to these defendants were dismissed without prejudice in a separate judgment signed by the trial court on July 22, 2013. The dismissal of Dr. Cohn and her insurer is not subject to this appeal.

The hearing on Acadian, LERN, and Interim LSU's exceptions of prematurity continued with oral argument, after which the trial court took the matter under advisement. The trial court issued its written reasons for judgment on July 26, 2013, and granted the exceptions of prematurity dismissing the Millers' claims without prejudice for the three remaining health care provider defendants,

4

Acadian, LERN, and Interim LSU.[2]  A judgment reflecting the trial court's ruling was signed on August 15, 2013, and is the source of the Millers' timely appeal to this court.

## ASSIGNMENT OF ERROR

The district court erred by granting Acadian, LERN, and Interim LSU's Dilatory Exceptions of Prematurity and dismissing Appellant's case.

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure Article 926(A)(1) contains the dilatory exception of prematurity, which "questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Spradlin v. Acadia-St. Landry Med. Found.,* 98-1977, p. 4 (La. 2/29/00), 758 So.2d 116, 119. Louisiana Code of Civil Procedure Article 423 provides in pertinent part, "When an action is brought on an obligation before the right to enforce it has accrued, the action shall be dismissed as premature, but it may be brought again after this right has accrued."

Louisiana Revised Statutes 40:1299.47(A) requires review by a medical review panel for any qualified health care provider covered under the Medical Malpractice Act.  The statute further provides, "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to the Section." La.R.S. 40:1299(B)(1)(a)(i).

The Louisiana Supreme Court has emphasized that the Louisiana Medical Malpractice Act's "limitations on tort liability for a qualified health care provider

---

[2] The trial court's written reasons for judgment only reference the exceptions of prematurity filed by Acadian and LERN, however the judgment issued on August 15, 2013, also grants the exception of prematurity filed by Interim LSU and dismisses the Millers' claims against it as well.

apply strictly to claims 'arising from medical malpractice,' La.Rev.Stat. 40:1209.4(I), and that all other tort liability on the part of the qualified health care provider is governed by general tort law." *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-451, p. 5 (La. 12/1/04), 888 So.2d 782, 786.

We conduct a *de novo* review of the trial court's grant of the dilatory exception of prematurity as the issue of whether a claim sounds in medical malpractice involves a question of law. *Eldridge v. Heritage Manor*, *L.L.C*, 06-718 (La.App. 3 Cir. 11/02/06), 942 So.2d 743. The burden of proof is on the moving parties, in this case the defendant health care providers, to show that each is entitled to a medical review panel because the allegations made by the claimant fall within the LMMA. *Williamson*, 888 So.2d 782.

When a dilatory exception of prematurity is raised, La.Code Civ.P. art. 930 allows the introduction of evidence at the contradictory hearing on the exception to "support or controvert any of the objections pleaded." If evidence is admitted at the hearing, and in this case, evidence submitted by Acadian was admitted without objection by the Millers, "the exception must be resolved on the evidence presented, rather than on the allegations in the petition." *SteriFx, Inc. v. Roden*, 41,383, p. 4 (La.App. 2 Cir 8/25/06), 939 So.2d 533, 536.

Louisiana Revised Statutes 40:1299.41(A)(13) defines medical malpractice as:

> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

6

Louisiana Revised Statutes 40:1299.41(A)(22) & (9) further defines the terms of tort and health care pursuant to the LMMA as follows:

"Tort" means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.

"Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

It is undisputed that Acadian, LERN, and Interim LSU are all qualified health care providers pursuant to La.R.S. 40:1299.39. Based on the requirements stated above, the supreme court in *Coleman*, 813 So.2d at 315-16, set forth six factors in making a determination of whether certain conduct by a qualified health care provider constitutes "malpractice," as defined under the LMMA:

(1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill,

(2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached,

(3) whether the pertinent act or omission involved assessment of the patient's condition,

(4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform,

(5) whether the injury would have occurred if the patient had not sought treatment, and

(6) whether the tort alleged was intentional.

7

## *Allegations Against the Health Care Providers*

The trial court in its written reasons for ruling specifically addressed the issue at hand, whether or not the claims made by the Millers against all three health care providers, Acadian, LERN, and Interim LSU, were covered by the LMMA.

The Millers' relevant allegations against Acadian are contained in paragraphs thirteen and fourteen of the petition and state as follows:

13.
Acadian did not respond in a reasonable [manner] to the request to transport Richard from Riverside to New Orleans as above described. The estimated 50 minutes to arrive at Riverside was unreasonably lengthy. Moreover, the actual 92 minutes it took for Acadian['s] helicopter to arrive at Riverside was even more unreasonable. Additionally, Acadian did not inform LERN or Riverside personnel that such an inordinate period of time would have lapsed before arrival at Riverside.

14.
Acadian's failure to provide reasonably expeditious helicopter service, and their failure to notify LERN and/or Riverside personnel of the time it would take to get to Riverside, ultimately resulted in Richard being denied timely medical care he needed which denial resulted in his death.

The relevant allegations in the Millers' petition against LERN are as follows:

15.
LERN was created by the state of Louisiana to protect citizens of this state "against unnecessary trauma and time-sensitive related deaths and incidents of morbidity due to trauma... ." As such, LERN was tasked to create a comprehensive, coordinated statewide system for access to regional trauma-patient care throughout the state. (R.S. 40:2841).

16.
LERN has created a network of hospitals and "Participating Pre-hospital Providers" (i.e., ambulance and EMS services) that result in LERN acting as a facilitator/dispatcher for placement of patients in need of emergency medical treatment for medical conditions. LERN functions as a database of the availability of medical resources at the various network hospitals. It also functions as a coordinator and dispatcher related to the transportation of such patients by directing where the patient should be transported.

17.

In this matter, LERN was guilty of negligence in not ensuring that its contracted Pre-hospital Provider (Northshore EMS) communicated with LERN about Richard's medical condition and needs from the scene of the accident. LERN was also negligent in taking an unreasonable amount of time to coordinate transportation of Richard once LERN had been notified of his medical condition and needs. LERN was also negligent in failing to track/monitor the transportation that was initiated with Acadian. Moreover, LERN was negligent in not altering the transportation method and/or destination in spite of the excessive delays especially in light of Richard's extremely critical medical condition.

18.

The utter failures by LERN constitute gross negligence by LERN. LERN's actions are especially egregious considering that their actions were exactly what LERN was created and tasked to prevent. The creation of LERN and delegating such far-reaching authority and responsibility has resulted in LERN being the focal point for coordinating placement and transportation of critically needy patients such that when it fails to properly function (as in this case) their negligence is willful, wanton and grossly in disregard for the safety of patients.

The relevant allegation against Interim LSU is as follows:

30.

University Hospital refused to allow decedent to be transferred to it, a facility that was capable of preforming the needed surgery, until it was sent the results of a diagnostic test, thus delaying the transfer process during this critical time, an action that caused and/or contributed to Mr. Miller's death and that falls outside the ambit of Louisiana Medical Malpractice Act.

The trial court in its written reasons summed up the Millers' contentions against the three health care providers and stated, "Plaintiff contends that the defendants' failure to timely transport her husband to a medical facility equipped to treat his injuries was a factor that contributed to his death. The MMA expressly includes within its definition of malpractice the 'failure to render services timely.' La.R.S. 40:1299.41 (A) (13)."

The trial court further stated, "[D]espite predicating her claims on a delay in rendering treatment, plaintiffs argue that the MMA does not apply, because the

9

defendants were providing transportation services rather than medical treatment."
Like the trial court, we disagree with the Millers' claims.

In reviewing the Millers' petition and the medical records and recording of the telephone conversation between Riverside personnel and Acadian, it is clear that the actions of each of the health care providers before the court were intertwined. All were working in concert to attempt to provide the most expeditious medical treatment to Mr. Miller. It is undisputed that he was in very critical condition.

### *LERN and Interim LSU*

The facts and allegations made by the Millers confirm that a medical determination had to be made by LERN in order to choose the most suitable medical facility to treat Mr. Miller's injuries. The Millers argue in their reply brief, that neither LERN nor Interim LSU offered evidence at the hearing to establish they are entitled to the protections of the LMMA. This argument has no merit, as the allegations in the Millers' petition clearly discuss the function of LERN, which was created to expedite the transfer of seriously injured patients to the medical facility best suited to treat the patient's injuries.

Likewise, Interim LSU is a trauma center with the staff and facilities to treat seriously injured patients. The Millers' petition alleges that although Interim LSU was capable of performing the necessary surgery on Mr. Miller, Interim LSU delayed his transport until diagnostic testing could be completed and sent to Interim LSU. Obviously, this testing is a medical determination designed to assist the personnel at Interim LSU in determining what type of surgeon and facilities would be required to treat Mr. Miller once he arrived. In addition, the testing was necessary to determine whether Mr. Miller was stable enough for the transfer to

take place to Interim LSU, or whether the transport should be attempted as a last life-saving effort.

It is clear that both the determination made by LERN and the testing required by Interim LSU were medically related and will require review by the MRP in order to determine if their actions and the alleged delay breached the standard of care for an emergency network such as LERN and a hospital such as Interim LSU.

## *Acadian*

The Millers specifically argue that the actions of Acadian are not medically related, but occurred between the time of the call from Riverside at 5:36 p.m. and their arrival at 7:08 p.m., some ninety-two minutes later, in excess of the fifty minutes they allege in their petition the Acadian helicopter was estimated to arrive. The recording of the telephone conversation submitted into evidence by Acadian reflects that the Riverside staff member who contacted Acadian for Dr. Cohn was informed that it would be at least an hour and fifteen minutes before Acadian could respond. The delay was due to the unavailability of a helicopter, which was on another mission and required a crew change and the need to refuel before departure for Riverside.

The recording also reflects that the Acadian dispatcher requested that the Riverside staff member contact Acadian if this time period was not acceptable to Dr. Cohn. No call was ever made to Acadian to cancel the helicopter and the Acadian helicopter arrived at Riverside at 7:08 p.m., some seventeen minutes later than originally anticipated.

Although Acadian arrived at 7:08 p.m., the Acadian personnel were unable to load and begin transport of Mr. Miller until 7:40 p.m., as the testing required by

Interim LSU was not complete.  Unfortunately, Mr. Miller died upon his arrival at Interim LSU.

The Millers argued that *Robinson v. Allen Par. Police Jury*, 05-394, (La.App. 3 Cir. 12/30/05), 918 So.2d 535, *writ denied*, 06-233 (La. 4/24/06), 918 So.2d 535, applied to this case. In *Robinson* a panel of this court found that the failure of Acadian to timely transport a patient due to a mechanical failure of a helicopter was not covered under the LMMA, because it was not "treatment related" or the result of a "dereliction of professional skill." *Robinson*, 918 So.2d at 539.

The trial court correctly distinguished a mechanical failure from the circumstances where the only available helicopter was on another mission and would require a crew change and refueling before it could respond to transport Mr. Miller.  The trial court then determined from the medical records submitted by Acadian that it was more expeditious to transport Mr. Miller by helicopter than to risk the trip across Lake Pontchartrain and the likely delays due to traffic congestion when they reached the city of New Orleans.  The condition of the roads and the effects of a potentially rough ride on Mr. Miller's condition were also considered. The trial court then found that the determination to wait for the helicopter was an exercise of medical judgment in light of Mr. Miller's critical injuries.

The trial court in its ruling determined that all three of the health care providers' medical decisions and actions taken on behalf of Mr. Miller were intertwined and cannot be separated for the purposes of the court's analysis. We agree. Therefore, each health care provider is entitled to a review and opinion issued by a MRP to determine if the standard of care applicable to each was breached in the alleged delay of the treatment provided by all three health care

providers prior to Mr. Miller's death.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court granting the dilatory exceptions of prematurity filed on behalf of Acadian Ambulance Service, Inc., Louisiana Emergency Response Network, and Medical Center of Louisiana at New Orleans, now known as Interim LSU Public Hospital, dismissing without prejudice the claims of  Brenna Ash Miller, Individually and as the duly appointed guardian of the minor child Skyler Miller, and the individual authorized to make the claim on behalf of the Estate of Richard A. Miller, Jr., pursuant to the LMMA. All costs of this appeal are assessed to Brenna Ash Miller.

**AFFIRMED.**