# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 26-21

**JESSICA JOHNSON, RONALD JOHNSON ROWE, JA'CALA CHARLES, AND THE ESTATE OF RONALD JOSEPH JOHNSON**

**VERSUS**

**OPELOUSAS HEALTHCARE PROPERTIES, LLC D/B/A HERITAGE MANOR OPELOUSAS, PATHWAY MANAGEMENT OF LOUISIANA, LLC, AND XYZ INSURANCE COMPANIES**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 25-C-01249-A
HONORABLE GREGORY JAMES DOUCET, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CANDYCE G. PERRET**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Candyce G. Perret, Charles G. Fitzgerald, Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Nelson W. Wagar, III**
**Sarah Wagar Hickman**
**Jennifer Seiler Avallone**
**Wagar Hickman, LLC**
**1590 West Causeway Approach, Suite 2**
**Mandeville, Louisiana 70471**
**(985) 888-8740**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **Jessica Johnson**
      **Ronald Johnson Rowe**
      **Ja'Cala Charles**
      **The Estate of Ronald Joseph Johnson**

**Charles A. Schutte, Jr.**
**Jen O'Connell**
**Imelda T. Fruge**
**Taylor, Porter, Brooks & Phillips L.L.P.**
**450 Laurel Street, 8th Floor**
**Post Office Box 2471**
**Baton Rouge, Louisiana 70821-2471**
**(225) 387-3221**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
      **Opelousas Healthcare Properties, LLC, d/b/a**
      **Heritage Manor Opelousas**
      **Pathway Management of Louisiana, LLC**

**PERRET, Judge.**

Jessica Johnson, Ronald Johnson Rowe, Ja'Cala Charles, and the Estate of Ronald Joseph Johnson (collectively, "Plaintiffs") appeal a trial court judgment granting an exception of prematurity in favor of Opelousas Healthcare Properties, LLC, d/b/a Heritage Manor Opelousas ("Heritage Manor"), and Pathway Management of Louisiana, LLC (collectively, "Defendants"). Plaintiffs do not dispute that Defendants are qualified healthcare providers but argue that the trial court erred in finding their cause of action involved medical malpractice claims under the Louisiana Medical Malpractice Act ("LMMA"), which requires them to submit their claims to a medical review panel prior to filing this action. For the reasons that follow, we affirm the judgment of the trial court.

**PROCEDURAL HISTORY AND FACTS:**

According to the petition, Ronald Joseph Johnson was living at the Heritage Manor because he was mentally and physically disabled and required a pureed diet. On June 27, 2024, while sitting in his wheelchair in the Heritage Manor's cafeteria, "Mr. Johnson made his way to the snack cart where he took a peanut butter and jelly sandwich that was left on the snack cart from the day before." After taking two bites of the sandwich, he allegedly choked to death.

On June 26, 2025, Plaintiffs filed suit against Defendants alleging, "Defendants breached their duty owed to Mr. Johnson by failing to keep the cafeteria safe from hazards, failing to adequately supervise residents, and failing to remove the snack cart from an area that was occupied by Mr. Johnson."[1] Plaintiffs allege the Defendants failed "to properly protect and supervise Mr. Johnson despite actual and

---

[1] Although the docket sheet states that the suit was filed on July 26, 2025, we find this to be a typo as the petition is stamped as being received by the court on June 26, 2025.

constructive knowledge of his medical condition, [and] caused the injuries suffered by Mr. Johnson and ultimately his death."

In response, Defendants filed an exception of prematurity, arguing that they are qualified health care providers pursuant to the LMMA and that the Plaintiffs' claims were required to be submitted to a medical review panel. Defendants note that the Plaintiffs' lawsuit was filed on the same day as the Plaintiffs filed their request for a medical review panel and that the "[p]etition is an obvious attempt to circumvent the LMMA's limitations on damages by disguising allegations of medical malpractice as ordinary negligence." Defendants argue that the "allegations fall squarely within the LMMA regardless of whether the Petition mischaracterizes them under general theories of negligence" and that "[t]he LMMA provides Plaintiffs' exclusive remedy against the Nursing Home and Pathway for any act, error, omission or neglect whether characterized as negligence, malpractice, breach of contract, or breach of the standard of care." In support of their exception of prematurity, Defendants attached: (1) a copy of the June 26, 2025, Request for Review with Reservation of Rights and (2) copies of the Defendants' Certificates of Enrollment issued by the Patient's Compensation Fund ("PCF") Oversight Board.

After a hearing on the exception of prematurity, the trial court orally stated its reasons for granting the exception of prematurity:

> The Court does make the following findings: There is a Patient Compensation Fund request made, Docket 25-00566. The Court also notes that the . . . defendant is a skilled nursing facility whose function is to provide medical, continuous nursing and other health services. Also, the Court notes the LMMA Act, 40:1231.1, healthcare is defined as any healthcare provided to a patient during confinement. Healthcare providers, in brief, specifically states nursing homes and it describes malpractice as a tort or breach of contract based on healthcare or services rendered by a healthcare provider.

2

The Court also notes 40:1231.8 where it states no cause of action against a healthcare provider until presented to Medical Review Panel.

In this matter, after reviewing all the documents and hearing the evidence, the Court finds that defendants are, number one, a healthcare provider; number two, it provides healthcare; number three, the alleged actions fall within the definition of malpractice; number four, plaintiff is bound by the Medical Malpractice Act; number five, suit cannot be commenced before claims are presented to the Panel.

Thereafter, on October 16, 2025, the trial judge signed a written judgment granting Defendants' exception of prematurity and dismissed Plaintiffs' suit without prejudice pending a decision of the medical review panel. Plaintiffs now appeal, alleging the following sole assignment of error: "The court erred in finding this to be a case of medical malpractice, within the ambit of the Louisiana Medical Malpractice Act, and thereby sustaining Appellee's Exception of Prematurity."

**STANDARD OF REVIEW:**

On appeal, the granting of an exception of prematurity is reviewed de novo as the issue of whether a claim is governed by the provisions of the LMMA rather than general tort law presents a question of law. *Miller v. Acadian Ambulance Serv., Inc.*, 13-1269 (La.App. 3 Cir. 3/5/14), 134 So.3d 250, *writ denied*, 14-698 (La. 5/16/14), 139 So.3d 1028. The burden of proving prematurity rests with the health care provider "to show its entitlement to the commencement of a medical review panel prior to the filing of suit because the allegations of the [plaintiffs'] petition fall within the ambit of the medical malpractice act." *Broussard v. Lafayette Physical Rehab. Hosp., LLC*, 15-1185, p. 6 (La.App. 3 Cir. 5/4/16), 191 So.3d 1202, 1206.

**DISCUSSION:**

Louisiana Code of Civil Procedure Article 926(A)(1) contains the dilatory exception of prematurity, an exception that "questions whether the cause of action has matured to the point where it is ripe for judicial determination." *Kelleher v. Univ.*

3

*Med. Ctr. Mgmt. Corp.,* 21-11, p. 3 (La. 10/10/21), 332 So.3d 654, 657. As the supreme court further stated:

> A medical malpractice claim against a qualified health care provider is subject to dismissal on a timely exception of prematurity if such claim has not first been reviewed by a pre-suit medical review panel. La. R.S. 40:1231.8. *See also Dupuy*, [*v. NMC Operating Co., L.L.C.,*] 2015-1754 p. 4 [(La. 3/15/16),] 187 So.3d [436,] 438. In such situations, an exception of prematurity neither challenges nor attempts to defeat any of the elements of the plaintiff's cause of action but instead asserts that the plaintiff has failed to take some preliminary step necessary to make the controversy ripe for judicial involvement. *Id.* The burden of proving prematurity is on the moving party, . . . which, in a medical malpractice case, must show that it is entitled to a medical review panel because the allegations fall within the scope of the Act. *Dupuy*, 2015-1754, p. 4, 187 So.3d at 439.

*Id.*

The supreme court recently addressed the LMMA and medical malpractice allegations within a nursing home and stated that the LMMA was enacted in response to a "'perceived medical malpractice insurance 'crisis'" and was intended "'to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical service to the public.'" *Broden v. Priority Mgmt. Grp., L.L.C.*, 25-1651, p.1 (La. 2/12/26), 427 So.3d 726, 728 (quoting *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754 p. 4 (La. 3/15/16), 187 So.3d 436, 439.) To achieve these goals, the LMMA provides qualified health care providers with two advantages: "a limit on the amount of damages, and the right to an opinion from a medical review panel before a plaintiff may proceed in litigation." *Broden*, 427 So.3d at 728.

In *Broden*, the plaintiffs filed suit against a nursing home and its management company, Priority Management Group ("PMG"), alleging PMG intentionally maintained inadequate funding of the nursing home, which lead to understaffing and inadequate care of Mr. Russell Alexander, the decedent. PMG filed a motion for a

partial summary judgment, arguing that the plaintiffs' allegations fell within the protections afforded by the LMMA. However, the plaintiffs argued that their claims against PMG were administrative negligence claims that did not involve healthcare and were therefore not subject to the LMMA. The trial court denied PMG's motion for partial for summary judgment and the fifth circuit upheld the denial, finding "genuine issues of material fact remain regarding whether [PMG] is a 'healthcare provider' as defined in the LMMA, and even if so, whether the administrative negligence claims brought against [PMG] constitute 'malpractice' as defined in the LMMA." *Broden v. Priority Mgmt. Grp., L.L.C.*, 25-528, pp. 3–4, (La.App. 5 Cir. 12/30/25) (2024 WL 5243078), *writ granted, decision rev'd*, 25-1651 (La. 2/12/26), 427 So.3d 726. The supreme court granted writs and reversed the lower courts' judgments, finding the plaintiffs' allegations of inadequate care, understaffing, and underfunding of a nursing home were medical malpractice claims that "do not sound in general negligence, but rather embody the very policies the [LMMA] is meant to promote." *Broden,* 427 So.3d at 731. Specifically, the supreme court stated:

> Plaintiffs cause of action against PMG arises directly from "health care" performed by PMG—specifically, by acts PMG took or failed to take during Mr. Alexander's care. Any determination as to whether PMG breached its duty of care to Mr. Alexander ultimately turns on the level and adequacy of the health care provided to him. Rather than analyzing these facts in light of the statutory definitions, the trial court improperly focused on whether PMG must have rendered "core" medical treatment to a patient for its actions to be considered medical malpractice. In doing so, the trial court disregarded the plain language of "health care" and "malpractice" under La.R.S. 40:2131.1(A) and presupposed a "hands on treatment" requirement that does not exist. Returning to first principles and reviewing the plain language of "health care" and "malpractice" in the Act, we find that there is no genuine issue of material fact that the claims here are medical malpractice claims, and PMG is entitled to judgment as a matter of law. La. C.C. art. 966.

> Although the statutory language alone answers the question presented here, understanding that the statute cannot provide an outline

5

of every possible medical malpractice situation, this Court has set forth six factors to assess whether the conduct at issue sounds in medical malpractice or general negligence, as outlined in *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303. While the issue in this case typically presents on an exception of prematurity, reviewing courts also use to [sic] *Coleman* factors in the summary judgment context. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 16-0846, p.12 (La. 10/19/16), 218 So. 3d 513, 521.

The claims against PMG meet the first two factors of *Coleman*, "whether the particular wrong is treatment related or caused by a dereliction of professional skill," and "whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached." *Coleman*, p. 17, 813 So.2d at 315. The claims of understaffing and poor staffing directly relate to the degree of care that was, or should have been, provided to Mr. Alexander. Importantly, expert medical evidence will be required to establish both the standard of care for the sufficiency of nursing staff based on Mr. Alexander's needs, whether those medical needs were properly assessed, and whether PMG breached the standard of care by failing to ensure Chateau had sufficient resources to care for Mr. Alexander in accordance with his needs. *Compare*, e.g., *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson*, 04-0451, p.11-12 (La. 12/1/04), 888 So. 2d 782, 790 (finding that while expert testimony could be necessary to establish whether wheelchair maintenance was proper, expert ***medical*** testimony was not required).

The claims against PMG also satisfy the remaining *Coleman* factors. The alleged acts or omissions of PMG, including the failure to provide sufficient competent staff to meet Mr. Alexander's needs, would require an assessment of his condition and plan of care during his stay at Chateau. Likewise, the injuries to Mr. Alexander would not have occurred if he had not sought treatment at Chateau, a nursing home managed by PMG. Finally, though Plaintiffs allege the underfunding of Chateau was "intentional," this does not establish an intentional tort sufficient to circumvent the requirements and protections of the Act.

*Id.*, 427 So.3d at 729–30 (footnotes omitted) (emphasis in original).

Although the parties in *Broden* argued that Act 342 of the 2025 Regular Session, effective August 1, 2025, changed the language of La.R.S. 40:1231.1 to amend the LMMA's definitions to include certain additional types of negligence, the Louisiana Supreme Court noted that "[w]hile the new amendments clarify the existing law, they do not impact our analysis here, which finds that these claims

were—under either version of the law—medical malpractice claims." *Broden*, 427 So.3d at 729 n.2.

In this case, Plaintiffs do not refute that Defendants are qualified health care providers; thus, the issue is whether Plaintiffs' claims constitute medical malpractice under the LMMA or whether the claims constitute general negligence. Similar to the plaintiffs in *Broden*, Plaintiffs also argue that their petition was filed before "the Louisiana Legislature amended the LMMA to cover the claims presented in this case as to nursing homes in Senate Bill 134" and that because the petition makes no allegations of medical treatment being given or received, the trial court erred in granting the exception of prematurity. We disagree and find no merit to this argument.

Because Plaintiffs' petition was filed prior to August 1, 2025, we provide the following LMMA definitions at that time. Louisiana Revised Statutes 40:1231.1(A)(13) (emphasis added), in relevant part, defined "malpractice" as:

> *[A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider,* to a patient, *including failure to render services timely and the handling of a patient,* including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions . . . in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.[2]

Louisiana Revised Statutes 40:1231.1(9) defined "Health care" as "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the

---

[2] Senate Bill 134 revised La.R.S. 40:1231.1(A)(13), effective August 1, 2025, by adding the following sentence: "This includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care."

patient's medical care, treatment, or confinement[.]"[3] Louisiana Revised Statutes 40:1231.1(A)(22) defined a tort as being "any breach of duty or any negligent act or omission proximately causing injury or damage to another."

In determining whether a claim sounds in medical malpractice, the supreme court in *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303, set forth six factors to consider. In *Broden*, 427 So.3d at 729 n.4, the court summarized the *Coleman* factors as follows:

> (1) whether the particular wrong is treatment related or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.

After reviewing the supreme court's analysis and holding in *Broden*, we agree with Defendants that *Broden* "embodies the concept that any actions or inactions that affect services to nursing home residents fall within the LMMA." Although Plaintiffs argue their claims fall outside the LMMA because no health care was being performed when the incident occurred, we find the definition of health care, which at that time stated "any act or treatment performed or furnished, or which should

---

[3] Senate Bill 134 revised La.R.S. 40:1231.1(9), effective August 1, 2025, to define health care as follows:

> any act, treatment, administration, service, or care related to policies and procedures and the administration thereof, staffing, custodial services by licensed or certified staff, performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components. This includes all acts associated with the medical treatment of an individual, whether directly related to clinical care or performed in an administrative or managerial capacity necessary for the delivery of such care.

have been performed or furnished" encompasses Plaintiffs' allegations that Defendants failed to take appropriate actions while Mr. Johnson was in their care.

Further, as in *Broden*, we find the negligent acts complained of by Plaintiffs fall under the purview of the LMMA when applying the *Coleman* factors. The claims against the Defendants meet the first two factors of *Coleman* as Plaintiffs' claims of inadequate supervision/training and understaffing are related to the degree of care that was, or should have been, provided to Mr. Johnson. Because the petition asserts that Mr. Johnson "was not allowed to eat certain items because he was on a pureed diet" and that Mr. Johnson had "a diminished mental capacity[,]" we find expert medical evidence will be required to establish the standard of care required to address Mr. Johnson's needs and whether or not the Defendants breached that standard of care.

Regarding the remaining *Coleman* factors, we find the third factor is met as the petition alleges that Defendants assessed Mr. Johnson's condition and knew of his medical conditions requiring a pureed diet and a cognitive condition that required close supervision. We find the fourth and fifth factors are met because the Plaintiffs' petition acknowledges that Defendants failed to provide a well-trained staff to meet Mr. Johnson's needs during his stay and that Mr. Johnson's injuries would not have occurred if he had not sought treatment with the Defendants. As to the sixth *Coleman* factor, there are no allegations of intentional misconduct in the petition.

Accordingly, considering the *Broden* case as well as our analysis using the factors set forth in *Coleman*, we find Plaintiffs' allegations fall under the purview of the LMMA, which requires submission to a medical review panel. We therefore find that the trial court properly granted the Defendants' exception of prematurity.

9

**DECREE:**

The judgment of the trial court granting the exception of prematurity is affirmed. Costs of this appeal are assessed to Plaintiffs Jessica Johnson, Ronald Johnson Rowe, Ja'Cala Charles, and the Estate of Ronald Joseph Johnson.

**AFFIRMED.**